## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**TEVIN MONTANA**                                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 20-2812**

**RODNEY SLAY, WARDEN**                    **SECTION: "R"(3)**

## <u>REPORT AND RECOMMENDATION</u>

Tevin Montana, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that his application be **DISMISSED WITH PREJUDICE**.

On March 14, 2019, petitioner pleaded guilty to attempted second degree murder, possession with intent to distribute a controlled dangerous substance (heroin), possession with intent to distribute a controlled dangerous substance (marijuana in the amount of less than two and one-half pounds), and illegal carrying of a weapon. On that same date, he was sentenced on each count to a concurrent term of ten years imprisonment. Also on that same date, he then pleaded guilty to being a second offender with respect to the weapons conviction and was resentenced as such on that conviction to a term of ten years imprisonment.[1]

On July 23, 2019, petitioner filed an application for post-conviction relief with the state district court.[2] His application was denied on September 9, 2019.[3] His related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on December 12, 2019,[4] and the Louisiana Supreme Court on September 23, 2020.[5]

---

[1] State Rec., Vol. 2 of 3, minute entry dated March 14, 2019; State Rec. 1 of 3, guilty plea forms.
[2] State Rec., Vol. 1 of 3, post-conviction application.
[3] State Rec., Vol. 2 of 3, minute entry dated September 9, 2019.
[4] <u>State v. Montana</u>, No. 2019-K-1044 (La. App. 4th Cir. Dec. 12, 2019); State Rec., Vol. 3 of 3.
[5] <u>State v. Montana</u>, 301 So. 3d 1185 (La. 2020); State Rec., Vol. 2 of 3.

On October 7, 2020, petitioner filed the instant federal application seeking habeas corpus relief.[6]  The state filed a response arguing that the petition was untimely and, alternatively, that petitioner's underlying claim for relief had no merit.[7]  Petitioner was afforded an opportunity to file a reply to the state's response,[8] but no such reply was filed.

### Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

---

[6] Rec. Doc. 4.
[7] Rec. Doc. 26.
[8] See Rec. Doc. 7, p. 2.

Because petitioner does not allege the existence of a state-created impediment, a newly recognized constitutional right, or a newly discovered factual predicate, Subsections B, C, and D are not applicable in the instant case.    Accordingly, Subsection A controls, and, therefore, petitioner's federal limitations period commenced when his state court judgment became final.

With respect to determining that date of finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).   When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).  However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39.  As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Here, as noted, petitioner pleaded guilty and was sentenced on March 14, 2019.  Under Louisiana law, he then had thirty days in which to file an appeal.[9]  Because he filed no such appeal,[10] his state criminal judgment became final for the purposes of this federal proceeding no

---

[9] Louisiana law provides that a criminal defendant has thirty days to file a motion to appeal a conviction or sentence. La. Code Crim. P. art. 914.
[10] See Rec. Doc. 4, p. 2, answer to Question No. 8.

later than April 15, 2019.[11]  His federal limitations period therefore commenced on that date and then expired one year later, unless that deadline was extended through tolling.

Regarding tolling of the limitations period set forth in § 2244(d)(1), federal law provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

After ninety-eight (98) days elapsed, petitioner tolled his federal limitations period in the instant case by filing a post-conviction application with the state district court on July 23, 2019.[12] Although the district court denied relief on September 9, 2019, that application nevertheless remained "pending" for the purposes of § 2244(d)(2) for the duration of the post-conviction proceedings if petitioner continued to seek review at the higher levels of the state court system in a timely manner.  Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004).  Here, the state acknowledges that the petitioner did in fact seek review of the district court's denial, but the state argues that his related writ applications were not timely filed with either the Louisiana Fourth Circuit Court of Appeal or the Louisiana Supreme Court.

The Court rejects the state's argument challenging the timeliness of the writ application filed with the Louisiana Fourth Circuit Court of Appeal.  It is true that a litigant normally has only thirty days to seek supervisory review from a Louisiana Court of Appeal.  See Louisiana Uniform Rules of the Courts of Appeal Rule 4.3.  It is also true that petitioner did not file his writ application

---

[11] Because the thirtieth day fell on a Saturday, he had until Monday, April 15, 2019, to file an appeal.  See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

[12] Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  Here, petitioner signed his application on July 23, 2019, and his accompanying certificate of service states that he mailed it that same date.  See State Rec., Vol. 1 of 3, post-conviction application.

with the Court of Appeal within thirty days of the district court's judgment.[13]   Nevertheless, in its opinion denying relief, the Court of Appeal did not indicate that it found petitioner's application to be untimely.[14]   In the absence of any such indication, the undersigned must assume that the Court of Appeal determined the application was in fact timely.   See Grillette, 372 F.3d at 775 ("[W]hen the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions.   Thus, had the Louisiana Court of Appeal decided to reach the merits of the application notwithstanding a determination that the application was untimely, it appears that the court would have indicated any such untimeliness in its opinion." (citations omitted)); see also Bourgeois v. Bergeron, Civ. Action No. 09-3185, 2009 WL 5088756, at *4 (E.D. La. Dec. 23, 2009) ("While one could perhaps argue that the Fifth Circuit is too generous in its assumption that evident untimeliness is always noted without fail by the state courts, this Court may not unilaterally ignore the presumptions employed in Grillette."). Therefore, the undersigned finds that petitioner's federal limitations period remained tolled for the duration of the post-conviction proceedings in the Court of Appeal.

The state's argument concerning the timeliness of the related Louisiana Supreme Court writ application is also problematic, albeit for a different reason.   That court's Rules provide:

> An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs (but not when the court has merely granted an application for purposes of further consideration), or after a denial of an application, shall be made **within thirty days of the mailing of the notice of the original judgment of the court of appeal**; however, if a timely application for rehearing has been filed in the court of appeal in those instances where a rehearing is allowed, the application shall be made within thirty days of the mailing of the notice of denial of rehearing or the judgment on rehearing.   No extension of time therefor will be granted.

---

[13] As noted, the district court denied relief on September 9, 2019.  State Rec., Vol. 2 of 3, minute entry dated September 9, 2019.  However, even under the state "mailbox rule," petitioner's related writ application was filed no earlier than November 14, 2019, the date on which he signed the application.  See State Rec., Vol. 3 of 3, Application for Supervisory Writ of Review.

[14] State v. Montana, No. 2019-K-1044 (La. App. 4th Cir. Dec. 12, 2019); State Rec., Vol. 3 of 3.

Louisiana Supreme Court Rule X, § 5(a) (emphasis added). Here, this Court notes both that the Court of Appeal's judgment is dated December 12, 2019, and that petitioner did not even sign his related writ application until January 17, 2020,[15] more than thirty days after the date of the judgment. Nevertheless, that is not necessarily determinative because, as noted, under Rule X, the period for seeking review runs from the date the judgment was **mailed**. Given that the state has submitted no evidence that the Court of Appeal's judgment was in fact mailed on December 12, 2019, the undersigned, without more, declines simply to assume that the writ application was untimely. See Scott v. Cain, Civ. Action No. 02-0485, 2002 WL 1484385, at *2 (E.D. La. July 10, 2002). Therefore, out of an abundance of caution,[16] the undersigned finds that tolling continued uninterrupted from the date the original post-conviction application was filed in the district court (July 23, 2019) until the date the Louisiana Supreme Court ultimately denied relief (September 23, 2020).[17]

When the federal limitations period then resumed running at that point, petitioner had two hundred sixty-seven (267) days of the one-year period remaining. Because he filed his federal application on October 7, 2020,[18] a mere fourteen (14) days later, it was timely filed.

---

[15] See State Rec., Vol. 3 of 3, Application for Writ of Certiorari.

[16] In habeas corpus proceedings, federal courts "must be cautious not to apply the statute of limitations too harshly. Dismissal of a first habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999) (quotation marks omitted)

[17] A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief. Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).

[18] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner has declared under penalty of perjury that he placed his federal application in the prison mailing system on October 7, 2020. See Rec. Doc. 4, p. 15.

**Merits**

While declining to adopt the state's argument challenging the timeliness of petitioner's application, the Court nonetheless agrees with the state's alternative argument that petitioner's underlying claim for relief has no merit.

In this case, petitioner claims that it was a violation of the Double Jeopardy Clause to convict him of **both** possession with intent to distribute controlled dangerous substance in violation of La. Rev. Stat. Ann. § 40:966 **and** illegal carrying of a weapon in violation of La. Rev. Stat. Ann. § 14:95(E), noting that both of those crimes were predicated in part on his possession of the **same** marijuana. However, the state courts denied petitioner's double jeopardy claim in the state post-conviction proceedings, and federal law requires that such state court determinations must be accorded a high degree of deference.

Specifically, the AEDPA comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law. Bell v. Cone, 535 U.S. 685, 693 (2002); accord Langley v. Prince, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

7

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 572 U.S. 415, 426 (2014).  However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one."

Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted). "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief." Id. at 170.

> Further, the Supreme Court has expressly cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Woodall, 572 U.S. at 426 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

In summary, "AEDPA prevents defendants – **and federal courts** – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010) (emphasis added). The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. Woodall, 572 U.S. at 417.

In the instant case, petitioner's double jeopardy claim raises a mixed question of law and fact, and so, pursuant to the foregoing standards of review, this federal habeas court must defer to that state court decision denying the claim unless petitioner establishes that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1); Carlile v. Cockrell, No. 01-10318, 2002 WL 31319380, at *1 (5th Cir. Oct. 2, 2002) (applying the AEDPA's "mixed question" standard to a double jeopardy claim); Johnson v. Karnes, 198 F.3d 589, 593 (6th Cir. 1999) (same). For the following reasons, the Court finds that petitioner has not made that showing.

The protection against double jeopardy is enshrined in the Fifth Amendment and made enforceable against the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794 (1969); Rogers v. Lynaugh, 848 F.2d 606, 611 (5th Cir. 1988). The United States Supreme Court has explained:

> That guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted), overruled in part on other grounds, Alabama v. Smith, 490 U.S. 794, 802-03 (1989); accord Department of Revenue v. Kurth Ranch, 511 U.S. 767, 769 n.1 (1994).

Petitioner posits that his claim falls within the third category because his particular convictions under La. Rev. Stat. Ann. § 40:966 (which outlaws possession with intent to distribute a controlled dangerous substance) and La. Rev. Stat. Ann. § 14:95(E) (which outlaws the carrying of a weapon in certain circumstances) both stem in part from the **same underlying evidence**, i.e. the marijuana in his possession. However, the fact that an overlap of evidence exists is not controlling; rather, the determinative issue is **whether two underlying offenses are distinct**. See, e.g., United States v. Morgan, 437 F. App'x 354, 355-56 (5th Cir. 2011); Johnson v. Terrell, No. 95-30339, 1995 WL 581839, at *1 (5th Cir. Sept. 6, 1995). Where, as here, a court must determine whether offenses are distinct, the test to be applied is a straightforward one:

> We apply the Blockburger v. United States[, 284 U.S. 299 (1932),] test to determine whether two different statutes punish the same offense. Blockburger requires us to compare the two statutes at issue and ask "whether each provision requires proof of an additional fact which the other does not". If either statute contains no element not also found in the other statute, the statutes "fail" the Blockburger test and the defendant may not be punished under both of them "in the absence of a clear indication of contrary legislative intent". … The Blockburger inquiry focuses on the statutory elements of the offenses, not on their application to the facts of a specific case before the court. Thus, the question is not whether *this* violation of [the first statute] also constituted a violation of [the second statute], but whether *all* violations of the former statute constitute violations of the latter.

United States v. Singleton, 16 F.3d 1419, 1422 (5th Cir. 1994) (footnotes omitted). In the instant case, the two offenses at issue, i.e. La. Rev. Stat. Ann. § 40:966 and La. Rev. Stat. Ann. § 14:95(E), are distinct offenses under the Blockburger test because each clearly contains at least one element missing from the other.

For example, to support a conviction for possession with intent to distribute under § 40:966, "the state must prove: (1) possession of the controlled dangerous substance; and (2) **intent to distribute it**." State v. Gladney, 700 So. 2d 575, 578 (La. App. 2d Cir. 1997) (emphasis added). Moreover, **possession of a weapon is not an element of that crime**.

On the other hand, "[i]n order to convict a defendant of illegal possession of a weapon while in possession of a CDS pursuant to La. R.S. 14:95(E), the state must prove: (1) that the defendant possessed within his immediate control a firearm or other instrumentality customarily intended for use as a dangerous weapon, (2) while in possession of, during the sale, or during the distribution of a CDS." State v. Lattin, 256 So. 3d 484, 488 (La. App. 2d Cir. 2018). Therefore, that statute requires **possession of a weapon**, but **it does not *require* an intent to distribute a controlled dangerous substance**. [19] In fact, petitioner was not charged with violating § 14:95(E) because he possessed the weapon **while intending to distribute** the marijuana; rather, he was charged with violating the statute simply because he **possessed** marijuana "in the amount of more than 14 grams"[20] while he was also in possession of the weapon. His intentions with respect to that marijuana were irrelevant to the weapons charge.

Simply put: § 40:966 requires an intent to distribute, but it does not require possession of a weapon. Conversely, § 14:95(E) requires possession of a weapon, but it does not require an

---

[19] Under the statute mere possession of the controlled dangerous substance suffices. The statute provides:

> **If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon**, while committing or attempting to commit a crime of violence or **while unlawfully in the possession of a controlled dangerous substance except the possession of fourteen grams or less of marijuana**, or during the unlawful sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence. Upon a second or subsequent conviction, the offender shall be imprisoned at hard labor for not less than twenty years nor more than thirty years without the benefit of probation, parole, or suspension of sentence.

La. Rev. Stat. Ann. § 14:95(E) (emphasis added).
[20] State Rec., Vol. 2 of 3, bill of information.

intent to distribute.  Because each offense "requires proof of an additional fact which the other does not," there was no double jeopardy violation under the Blockburger test.

Out of an abundance of caution, the Court notes that the critical flaw in petitioner's argument to the contrary is that it is premised on what is referred to as the "same evidence" test. As petitioner correctly observes in his application, "[u]nder the 'same evidence' test, if evidence required to support a finding of guilty of one crime also supports a conviction for another offense, the defendant can be placed in jeopardy for only one of the two."[21]  However, the "same evidence" test is an additional, more encompassing test that was utilized for many years by Louisiana **state** courts in deciding double jeopardy claims.  State v. Frank, 234 So. 3d 27, 29-30 (La. 2017) ("Louisiana has also applied a 'same evidence' test in addition to the Blockburger test."); see also Turks v. Warden, Avoyelles Correctional Center, Civ. Action No. 11-cv-0391, 2014 WL 940554, at *3 (W.D. La. Mar. 10, 2014) ("Louisiana courts often refer to Blockburger but more often employ what is called a 'same evidence test' that is broader in concept than Blockburger.").  But petitioner's reliance on that test is misplaced for the following reasons.

As an initial matter, it must be noted that the Louisiana state courts applied the "same evidence" test as a matter of **state** double jeopardy law; the test simply does not apply to double jeopardy claims under **federal** law.  See United States v. Felix, 503 U.S. 378, 386 (1992) ("[O]ur precedents hold that a mere overlap in proof between two prosecutions does not establish a double jeopardy violation.").  However, federal habeas corpus relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983); Brown v. Tanner, Civ. Action No. 11-1102, 2011 WL 4746563, at *4 (E.D. La. Aug. 29, 2011), adopted, 2011 WL

---

[21] Rec. Doc. 4, p. 19 (citing State of Louisiana in the Interest of S.L., 94 So.3d 822, 829 (La. App. 5th Cir. 2012)).

4746104 (E.D. La. Oct. 6, 2011). "Therefore, whether [Louisiana's] 'same evidence' test was violated would be immaterial for federal habeas corpus purposes." Lewis v. Vannoy, Civ. Action No. 19-13629, 2020 WL 10229044, at *6 (E.D. La. Apr. 27, 2020), adopted, 2021 WL 2680146 (E.D. La. June 30, 2021).

Further, in any event, the Louisiana Supreme Court disavowed the "same evidence" test in 2017, holding:

> Louisiana courts have to some extent … viewed Blockburger as a constitutional minimum that is supplemented by a heightened protection against double jeopardy afforded under Louisiana law. That view has never been adequately grounded in any textual difference between this state's and federal constitutional provisions. …
> ….
> … Accordingly, we take this opportunity to make clear that the protections against double jeopardy mandated by the federal constitution, as restated in this state's constitution, fall within the analytical framework set forth in Blockburger and Louisiana courts need only apply that framework in analyzing questions of double jeopardy.

State v. Frank, 234 So. 3d 27, 31-34 (La. 2017). Therefore, even in the Louisiana state courts, "Louisiana's separate 'same evidence' test is no longer used in determining whether a double jeopardy violation exists." State v. Frost, 293 So. 3d 708, 715 (La. App. 2d Cir.), writ denied, 304 So. 3d 416 (La. 2020).

For these reasons, petitioner has not established that the state court decision rejecting his double jeopardy claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Accordingly, this federal court must defer to that decision and likewise deny relief.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Tevin Montana be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __24th__ day of November, 2021.

**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**